Hillary for America and correct the record. Mr. Mueller for the appellant, Ms. Malloy for the appellees. Good morning Mr. Mueller. Good morning. May it please the court. Greg This case involves a challenge to the dismissal of an administrative complaint and the case raises jurisdictional and merits issue. On jurisdiction, this court previously found. Can you bring your lectern up a little bit? It's at its highest point and it's at its highest point. Yes, I'll step closer and speak louder. Thank you. On jurisdiction, this court previously found an informational injury sufficient to establish standing to contribution limits and the source restriction that were in the district court opinion. There isn't standing for the court to address those. We certainly never said that. That wasn't before us initially. We certainly never said that we're standing to challenge contribution limits and source restriction. Exactly. So you're saying the district court conferred standing inadvertently in remanding it for that to be considered as well. Right. There are disclosure violations and an informational injury that can be addressed. Contribution limits or source prohibitions are more in the generalized grievance category of standing that this court did not find. That would have been the common cause area of case law. But all that's before us is the CLC challenge to the commission's determination that there's no reason to believe that Hillary for America or correct the record engaged in illegal coordination. And given that they do have an informational injury traceable to that no reason to believe deadlock, and that could be remedied by our decision, then why isn't it enough to just say they have standing and leave it, you know, not delve into micromanaging what happens after? You're not doubting we have standing on the information on the matter that was before us first time, right? Correct. You just think the district court to you, shockingly added that on remand to the agency, they should also consider contribution limits and source restrictions, which were not the source of informational standing. That's correct. You're not saying the case should be dismissed for one of standing. You're just saying if it goes back, it has to go back only for what it came with. It's actually your honor and remanded on that basis. And I think that there's authority that addresses Judge Lars concern is, for example, in the Davis case, the Supreme Court case, they described how standing isn't dispensed in gross, that you need to have standing for each claim and each form of relief that you're seeking. And here, as is, as it was in this court's earlier decision, the challenge to the disclosure limits and the informational injury established standing with respect to that. Can I push you, unless my colleagues object, they certainly can, because they've got seniority over me. Get to the substantive merits. I don't see much to this forfeiture of the appeal stuff, and I don't see much to the mootness. I am curious to hear what you have to say about the substantive merits, arbitrary and precious. And it's really, in my view, formed by a former chair Goodman's claim that the district court has gone way too far in embracing too many things and in confusing inputs, which might be exempt as opposed to was interesting and compelling in raising concerns that I didn't think we reached the first time that way. We thought the district court was confused for different reasons, but the district court now seems to conflate the input analysis to suggest that everything's in. Go ahead. I understand. Yes, Your Honor. So on the merits, we think the district court should be reversed for three reasons. First, it's the deference question. We don't think that they were deferential to the of reasons in the analysis there. We think that the... What deference are you claiming? It's under the Keysore test. We think that there's controlling weight should be given to the commission's or to the controlling group's interpretation of... Controlling weight, but they're not acting for the commission. So we don't do any kind of Chevron deference. That there's... I think that the deference analysis, there's two points to it. One is the controlling group's interpretation of the regulation. They are controlling and we review it because that's a way of making the statute functional. But in terms of what... Through what lens we review it. I took you to be saying that we use a deferential lens and I'm questioning whether that is supported when they're not acting for the commission. The statute says only four members can act for the commission. Right. This court's precedent has set up and in Orlowski in rationale and it's an arbitrary... It's a deferential review. But it's a deferential review. It's highly deferential review. It's limited review or less... You're climbing up such a high... We didn't buy that argument the first time around. Pardon? I'm sorry. We didn't buy that argument the first time around. The approach that the chief judge in the district board was embracing initially is the approach you're talking about now. We shot that down. We said that's wrong. That's not what the precedent supports. And there is something here to be considered. So there's nothing for us to defer to now. We've already said no, we don't buy it. But your honor... What's your second argument? I think there is a line of cases in this circuit where Orlowski and others... Okay. I've got to decide this. I'm telling you, only as one judge, my colleagues can come back and tell you otherwise. I don't know where you're going that's useful on deference. We have said loud and clear that on certain piece of your argument with respect to what those two judges or two commissioners said, we're not buying it. Okay. So what are the other two arguments? So I think what happened here is that the internet exemption was not properly applied. And let me explain. This is the good one? Yes. Okay. So they carefully looked at the record and they made certain determinations about the record. And so they determined that they wanted to proceed carefully. And they looked at the foreign statements that were in the complaint, the sworn statement that was provided in response. They looked at a couple of other categories and wouldn't consider those. For example, all of the commissioners decided that they were not going to rely on the WikiLeaks material that was, as the controlling group described, put out for an intelligence operation. And they determined that since it was illegally obtained and of a questionable source, they didn't want to reward that or have that influence the process. So they determined not to apply that. And then they also, and this is something that I think comes up more in the political context than other contexts. They determined not to rely on press accounts and in particular anonymous source press account because they determined those to be unreliable. So they proceeded with a, on the facts based on the sworn statements that were before them. Then they continued on and applied the internet exemption looking to prior commission precedent. They relied on a number of matters to do that, to find that certain types of input costs for these spending was what fell within the internet exemption and was not deemed to be. Certain types of input costs, all of them, huge number of input costs, right? Right. Yeah. And that's, what's notable about this case is that precedent defined these categories. And this case was, there were a lot of spending that fell into those categories. So I think that input costs were exempt internet communication as opposed to just making the determination in the first instance, whether it's actually input cost for the exempt. And if it is, it's exempt and that's what Goodman is saying. But if this record, I thought his argument was this record went way too far in questioning, whether the input, the internet exemption itself was in play. Right. It substituted its own test there. It decided that there should be some kind of bounded analysis there. And, and that wasn't consistent with what was in the statement of reasons. It wasn't an evaluation of what was in the statement. So, so the cost of producing a poll, for example, or a poll that is expensive to produce ordinarily under the FICA, that would be, if you, if you give that to a candidate or the campaign, that would be a thing of value. Right. That could be an in-kind contribution under certain. That, that, that would ordinarily be. If, yeah, if an individual is giving that to a candidate or, yeah. So, so your theory is that an expenditure for a coordinated communication that meets the content standards is simply not an expenditure for a thing of value. If it's, if it's not placed for a fee on another person's website, but just post it on the internet. Right. The, the category of inputs and the category of what gets posted onto their own website, they can engage in significant spending related to those postings. And indeed the board said, we're not even going to parse. We're not going to do what, like we have to do if we're claiming home office tax exemption, we're not going to do any of that. So if there's some amount of posting on unpaid internet, then all the inputs can basically be in this case. Right. Yes. And there's, and there's good reason for that. When the regulation was created, the, the, the, the rationale for the regulation was to create bright line categories where people could be certain about their, what their conduct was doing and how it would be treated under the act. But you got to figure out what constitutes an input. And I think everything on the board's view or commission's view. Sorry. And you know, not even Goodman who's or less on your side is saying, you got to do that. You got to figure out what's an input. If it really is an input, then it is exempt, but you got to figure it out. And you can't say, no, no, no. Generally all this is excluded, which is what we rejected the first time. So the statement of reasons did divide things into two categories here. There was what, what judge Lard described as, you know, there was office space and polling, and there were a number of cat items fell into that category. Then there was a second category of material, which was the surrogacy program training that they did and research and, and, and contacts with reporters that wasn't internet related. So they decided that that they did a separate analysis on that. And they looked to see whether it was coordinated and they determined that it wasn't coordinated. And they looked at, in particular, they, they, they looked at, there were substantial reimbursements for that type of material. So if it's reimbursed, it doesn't become a contribution. So they did differentiate between two categories of expenses here and made different decisions based on application of, of, of different precedent or different regulatory provisions. So summing up that line, how would you state the analysis that distinguishes between those, the, the training research? I mean, if there's, if you're doing paying for staff to do research and then you just post it all on your unpaid internet site, it seems like under the board's right to, to define that, that the first category is just the posted on the internet without being on somebody else's site for a fee that that's the one category. The other category where it was expenditures that weren't for internet related communications. But I'm saying why under the reasoning, the first, the reasoning of the first category, a more scrupulous job could be done and suck in all the things in the second category too. You just say, we're doing all this training and we're going to come up with a result. And everybody that's in the training is going to do a live blog interview of themselves in their own unpaid internet site at the end of it. And that would then exempt all of that. Well, I think that there are often opportunities for creative circumvention, but the reality in this instance was that they were dealing with the record as it was presented here. And research, if I want to pay a team of people, you know, 24 seven to do, do oppo research for a candidate. And I don't want to have to disclose, pay them all pay them to fly around the world, talk to people, you know, everything they possibly could do to have very powerful research and just everything that they do, they have to post on the internet for free. Done, right? Well, if I understand your question, you're asking really, what is the limiting principle? Yes. And, and so I think that there are a few, few answers to that. One is that in the Buckley speech context, we're not, we're not big on limits in that we're not trying to categories. Suspending can take place in those categories. So that was the priority with this rule was to have bright line categories. No, we're not trying to limit speech. We're only in the disclosure realm, precisely because we don't, we don't want to limit speech. It's just so that the public can evaluate who's behind this, who's paying. And so that it's clear the person who's engaging in this project. Yeah, exactly. So I think that, that's why I'm asking you, what is the limit? I think the limit is in the definition and that people accurately describing what they're doing and providing, you know, filing disclosure reports consistent with those regulations. So there are categories. And I think, can you be more concrete? Yeah. What's an input? How, how are you defining input cost for the exempt category? I mean, that's really, that's really what we're talking about here. And that's what we were concerned about in the first case. You just threw it all in and said everything was exempt. And then the district court then expanded it, seems to expand it. And we're not really getting to the crux of the question. What's an input cost? And how are you defining that input cost with respect to exempt internet communication? You can't say someone gets a good night's sleep and he's a staffer and something facilitates that, that's an input cost and he does internet work. Come on. That's the way it was reading initially. Anything that was related to something done on the internet, any chair that someone might sit at that could be moved over in front of the computer to get on the internet. If you buy that chair, that's an input cost. That's what we were concerned about. It made no sense. Now the district court's decision seems to sweep it all. And Goodman is saying, no, no, no, there's a way to do this in a clean way, consistent with what we thought we were doing years ago. What are you saying that's different? Exactly, your honor. I think that what has taken place over time and what the controlling group of commissioners was doing and applying it here was looking at commission precedent, because to some degree, this, how this applies depends on how they've decided things in previous matters. So that's what the controlling group did. And why did they tell us what, how you figure out what an input cost is with respect to internet communication? They looked at the cost, that issue here, certain of that we're not going to look at it. I would say we're not going to look at it. It's all exempt. Well, they analyzed it, I should say. It really would be helpful to be more concrete. So like in the FEC's own rulemaking, it notes that a political committee that pays a blogger to write a message and post it within his or her blog entry is making a reportable contribution, right? Yet all of these inputs seem to me to be paying people and paying for supplies that people are then posting on unpaid internet. And so I just would like something a little bit more concrete than look at precedent, analyze the situation, look at the past practice. Can you bring it down for us a little bit more concretely and explain, is there a line or is every campaign from now on just going to make sure they have the unpaid campaign central website where all the work gets laundered through and gone is the disclosure? Yes, Your Honor. I think to address the first part of your question, where you were describing the language that was in the explanation and justification, I'd make two quick points about that. That was describing political committees and line item disclosures that political committees make. That was predated this court's decision in speech now where independent only expenditure organizations like Correct the Record came into being. Okay. And so I think it's important, that distinction is important because the disclosure regime for super PACs or entities like Correct the Record is a previously described in the standing decision, that their disclosure is aggregated. And only then later, if it's deemed to be a coordinated expenditure, does it end up being a line item disclosure as a contribution, as an in-kind contribution. So we're making that distinction. So I think it's important to address Judge Blard's question about how do we define these input costs. And I think that it may be dissatisfying to hear, but there's only a few ways. They applied the text of the regulation, and they did look at what was in prior instances was deemed to be an input cost, and they listed a number of matters and types of matters and determined that the issues here or the spending here fell into those categories. So the answer for the paying a blogger is that now that's considered to be an input within the internet exception. So paying a blogger as like a hypothetical question? Well, paying a staff to blog on a hearing, to send emails, to post on social media, Twitter, all the rent, the salaries, training, lunch, hotels for conferences, all. None of it was disaggregated in the initial case. You all seem to think that it was somehow, if it's tangentially related to internet activity, it's exempt. That can't be right. But I think that the tension here is that what the commissioners in the statement of reasons were doing was looking at the particular categories of spending that existed in this case and found that it fit within commission precedent and within the text of the statute. And I understand that if you're looking beyond that or looking at it in a more abstract way, you may have questions about what's inside or outside. But I think that the statement of reasons here found that it was consistent with agency practice. It was within the bounds that had been described. On another issue, you've got the private right of action proceedings. So how does whatever we do here affect that? Yes. So the district court stayed the private right of action case to hear what this court had to say. And I think that one effect that it would have if the standing decision was properly applied by the district court, that would narrow or revoke the there was a proper application of standing. It would go back to the district court to analyze this and in the private party case. Yeah. And in the private party case, I think that the there would be a different analysis of whether jurisdiction for that case remain depending on what came from this court on standing grounds. And also, I think if it was just if it was just remanded to the district court for further consideration and this and then depending on what the district court did, he chose to remand it back to the agency that the private right of action case wouldn't have jurisdiction. How would it be remanded back to the agency for what the agency had if if the district court said contrary to law, the no reason to believe the agency ran out the 30 days that it had for conciliation. What what role does the agency have on remand? It seems like the isn't the question here only whether either the agency wins reverse on the merits or or if there's any live claim, it's for the private right of action to carry it forward. I know this is a complicated situation, so I'd appreciate your views on that. For your honor, I as a theoretical matter, I was thinking of all the potential possibilities, but. I think the if this court were to reverse the district court. I don't see. I think there is the possibility that private right of action. Jurisdiction would be like this situation. Take the situation. I didn't know that at all. I'm sorry. If if we were to reverse the district court, the private right of action dot dot dot. What was your just the. The only the only scope of jurisdiction that the private right of action could have consistent with this court's earlier standing decision would be to address informational injuries and disclosure violations. Well, if that's right, and I I'm not sure that that's before us, but if we were to affirm the district court, there's something that's still live and I take your point that the scope of that is. Maybe still disputed, but if there's a live claim, let's say for informational injury. That would not go back to the commission that would go back to the district court and be tried in the private party case. Is that right? I think it goes back to the district court in this case, not in the private right of case, and I think there could be argument about what the impact of this decision is on the private right of action. Yeah, I'd like you. Yeah, my understanding was you're challenging. The decision of the district court in this case, not the private right of action case. And there's a strange issue of forfeiture, which I whatever the other side can explain it. Uh, your argument is the remand. The district court's decision undergirding the remand is wrong and you state a number of reasons standing and you stay on the merits. The district court was wrong and you're saying, well, it shouldn't go back at all. We should win flat out to if it goes back to the commission, it should go back with a different decision on the district court. And we want you to outline it, meaning the court of appeals to say, one, the standing is not as broadly as the district court said. And to the understanding of the merits is different. And now the commission should operate with that on remand. Nothing's going to happen with the private right of action case until this case gets done and then back again, you haven't lost. And there's no mootness. You certainly have a right to appeal a decision of district court, which orders a remand. If you think the district court's wrong and the other side should know they can't do anything in the private right of action case until this case is done. And indeed that's why just chief judge Bozeman stayed the other case. I thought that's what you were arguing. It's exactly your honor. And the, um, so the step from this court would be the reverse and remand back to the district court for further proceedings, consistent with, and, and you taking into account, we say standing, there's an issue, the way it's stated by the district court and the district court may have been a little bit elaborate in, in its view of the merits. And so it should reconsider and then can decide whether or not you have to remand to the agency. Then it goes back and then the agency will do presumably do the district court orders and the separate private right of action cases has to sit and wait. That is correct, your honor. And then I think if it's back up for my understanding, your theory, I just want to make sure I was understanding. Yes. And, and your honor also raised the, um, forfeiture issue. And I don't see that as an issue because these, the issues that are before the court today were, were raised and pressed and passed upon flow. And so I think they're properly before this court. So you were asking for deference and you mentioned Orlowski and Orlowski was the majority of the commissioners. And so on my question about why there should be deference to blocking commissioners, I understand that we review the reasoning, but we also don't need, um, timely response at all. Then that has implications as well. We review a case with no opinion at all for whether there's reason to believe that it should be investigated. So I'm just, I'm just trying to understand a little bit more your theory about why there's any deference owed to the rationale that a non-majority of commissioners gives. I understand we review it functionally, but, uh, deference. Yeah. And there's a line of cases and I think DCCC, uh, and Orlowski, um, and, and there's been subsequent cases stemming from those where the commission or the court is reviewing the declining to go ahead commissioners rationale. And it's, it's been given deference by the courts. And you don't have, I mean, I had asked you several times, I'm not going to beat the dead horse, but you don't have any on the merits of reading the statute, anything to add about how concretely one should distinguish what is an input into an unpaid internet communication and what is not. No, other than what was described in the statement of reason and the regulation and I described. Yes. Oh, back to remodel. Good morning. Uh, Tara Malloy for plaintiffs of police campaign legal center or CLC and Catherine Hinckley Kelly. Hey, please support plaintiffs have argued in both our motion to dismiss and their merits brief that the appealed the FEC attempts to press here is forfeit is moot and it has no merit. I understanding from the earlier questions is that your primary interest is in the merits. I'm just speaking for myself. I, I find no force to your arguments on forfeiture or mootness unless you're perfectly happy to let you know, I've prepared the case carefully and I think those arguments are bogus. I think there are other arguments that are important that we ought to focus on, but you use your time as you prefer. I'm interested in the, the only threshold issue I'm interested in is the standing issue and whether it's for us to say anything about the scope other than just to decide the threshold issue or, um, do we need to, because the district court on, uh, FECs view when decided to broadly, although too many claims, not too broadly in the merit sense, but claims that, that the FEC things are not properly before. I'll start with the FECs, uh, so-called subject matter, jurisdiction argument, the so-called what subject matter, jurisdiction argument, but it is well, that's what I'm understanding. Uh, we don't see this as a jurisdictional argument at all. At least it does not concern the jurisdiction of the district court to hear the actual legal claim brought by plaintiffs in this case. Instead at most, it is a collateral attack on the jurisdiction of a different court to hear a different case. And that is the district court hearing the private action, which is a separately filed case against different parties. Now, let me tell you as the one who worked on that first case, this case was not about contribution limits or source restrictions that did not form the basis for the, uh, informational standing. Absolutely not. Exactly. Exactly. And I would note that the only legal claim brought by the legal complaint here is that the FEC acted contrary to law and dismissing plaintiff's administrative complaint under 301-09-88. That is the only legal claim. The basis for standing that this court acknowledged was that the FEC's dismissal of the administrative complaint caused plaintiff's informational harm by propping us of information to which we were due under FICA, a quintessential informational injury. The plaintiffs have never sought to enforce a contribution limit in their legal case. We have simply sought a ruling that the dismissal was contrary to law. We have never asserted standing in the legal case on the basis of concern that's been expressed. The district court may have overreached in suggesting that if the case goes back to the commission, the commission is required to consider contribution limits and source restrictions. That's not right. That is hypothetical. The district court did not order. I don't know what we're questioning about. If you're agreeing that there isn't standing to support those kinds of claims and we wrote an opinion that way, we don't have to say anything more than this case is still about the informational standing that brought the first action here. You're saying that we have confirmed our standing to bring our legal claim, which is under 301-09-88. On informational standing grounds. Exactly. Which do not include contribution limits and source restrictions. And to clarify, the district court simply remanded the case back to the FEC to conform with the decision. It did not order the FEC to take any action. I think we're fussing over nothing. I think you're agreeing. I'm maybe disagreeing that the court below overreached by ordering the FEC to take action with respect to contribution limit violations because the court in no way made that order. It simply remanded the case back to the commission for the commission to conform with the reasoning of the district court. It explained why it believes that the controlling rationale for dismissal was contrary to law and the FEC simply had to re-evaluate the administrative complaint according to the reasoning of the district court. It did not have to find any violations. You're saying it over and you're using time. We'd love, I would love to hear what you have to say on the merits and what this court was going for. I think we may be in heated agreement that basis for standing of the legal case was not in any way tied to the contribution limit violations in the administrative complaint. All right, so yes, the merits. To step back, the FEC has been conducting its defense of the controlling commissioner's legal rationale for dismissing the administrative complaint on the basis of the regulatory internet exemption. The district court's decision was that the statute does not have any internet exemption. This is truly a regulatory invention. Statute provides that any expenditure made in cooperation, consultation, or concert with a candidate shall be deemed a contribution subject to all the applicable disclosure requirements as well as contribution restrictions. The first point of a commission dismissal in the 30109-88 action is under Orlowski to determine whether the dismissal rested upon an impermissible interpretation of FECA or otherwise unduly compromise its purposes. Our position is that the capacious application of the internet exemption to exempt all categories of correct the record spending was contrary to the statute's clear text and fundamentally undermined its purposes. The question that you raised about whether or not these expenditures or those expenditures were inputs is purely part of the regulatory system, not part of the statutory system for regulating coordinated expenditures. So it would be our position that if the FEC were to put any substantial amount of coordinated spending in the category of inputs, that would be contrary to the statute. Any amount of what? Substantial amount. Any substantial amount? Any substantial amount of correct the records coordinated spending in this? Our amplification is a little muffled. So when you speak quickly, we, I mean, even though we're this close, we actually miss your word. A substantial amount of correct the records, coordinated and records coordinated into the bucket of inputs, that that would be contrary to the statute, which has no internet exemption and has no exemption for inputs for internet communications. That this was never something contemplated by the statute and clearly would undermine its purposes by here, for instance. You're saying there's another issue that there cannot be an internet communication exemption at all? So you don't even have to think about inputs? Yeah. Well, then what you're saying isn't helpful to me in any event, because we're trying to figure the reason we were pushing the line of questioning with the opposition is. Because Goodman raises a legitimate concern is, wait a minute, you've got to figure out whether or not this is really an input before you decide whether it's within the exempt category. Do you find that useful or not? And what do you have to say about that? He's saying you can't just say you went out to lunch and you do internet work. That's not an input, but there are other things that are, and we can't figure out that's what Judge Bilda's been saying consistently. What? How do you define it? Right. The internet exemption exempt unpaid internet communications or unpaid internet activity by individuals from coordination. And that's permissible in your view. That's permissible. Unpermissible. This is great, isn't it? You can't hear us and we can't hear you. The internet exemption is permissible under the statute because its aim was to exempt unpaid activities or perhaps very de minimis costs involved with internet. And thus they wouldn't really constitute expenditures under the statute. And the commission would say, well, it may not be statutory, but there's a First Amendment concern about people just speaking. And if they're not buying advertising and or using other paid media, query whether the statute can require disclosures. That was not an argument really pressed by the controlling commissioners in this case. That seems to be an argument made by Mr. Goodman in his amicus brief. But the statute doesn't provide for any exemptions of, I'd call it a significant expenditure from regulations of coordinated expenditure, if indeed it was made in cooperation consultation with the candidate. Now, to your point, Judge Edwards, about inputs, the rules exempt internet communication, unpaid internet communication. They do not discuss inputs at all. All the rules, the regulations are silent as inputs. Now, it is true that in various other agency guidance, there has been some consideration about whether costs associated with the dissemination of a communication to be assumed in the exemption. Yeah, because if the notion of input in the prior cases is legitimately a part of an expenditure that is exempt, it's just part of it. That was the notion. And you're not saying that's not a viable notion. It is what you agree. It's a viable notion. I would only state that in FEC past guidance and precedent, sometimes on matters that didn't involve coordination, they considered whether an input, which was really not called an input, it was simply a direct production cost of a communication to be deemed part of the cost of communication. So insofar as you need a line, I think the only types of inputs, so to speak, that the commission has ever considered part of a communication are those payments that, or those costs that pay for the costs of the direct, right? Actually, I guess that's right. Exactly. I want to get the line right. Those expenditures that directly and exclusively pay for the dissemination production of internet communication. Dissemination and production? Correct. But production is, that's the fighting area. What does that include? I'm not expressing a view, I'm just saying that's what we're struggling with. It's actually not that difficult. How do we have the internet exemption not essentially swallow the purpose behind it? Correct. And as I started explaining in the beginning, insofar as the internet exemption is applied broadly, as the commission did here, it is the exception that swallows the rule, and it does run contrary to FEC's text and purposes. I am saying that only in past FEC precedent has there been some coverage of direct production costs in the idea of what a communications expenditure is. And there's a very easy line that if a payment is directly and exclusively for the dissemination and production of internet communication, then perhaps it can be assumed under that none are very few of the costs or expenditures made correct the record of any direct connection to internet communication, and certainly weren't exclusively paying for internet communication. I'll just note that. When you say directly, how do we under, can you give examples, sort of concrete examples? Is paying a staffer to be a full-time blogger, if I don't pay the person, they're not going to be sitting there doing the to engage in internet communications. I would say that this DLC has conceded for the point of this case, that if a senator was directly and exclusively connected to internet communications, that it could be exempted under the rule. I think there's a question about whether that comports with the statute. Is there, and so you're the main part of the commission's reasoning, the blocking commissioner's reasoning that you take issue with is the refusal to parse to a portion cost. Let's say it's somebody's 50% time on internet communication or 10%. That's where, I think, is that where the exception is? There's a more basic problem, which is that both as the FEC's Office of General Counsel found, most of correct the record spending was not communication specific at all. Instead, most of the $9 million in expenditures, and I'm going to quote, went to payroll, salary, travel, lodging, meals, rent, fundraising, computers, equipment, bent tickets, hardware, insurance, office supplies, parking, and shipping. You're reading from? From the Office of General Counsel's report. J-A-189. That these were the expenditures that controlling commissioners deemed all these categories of spending to be in some way indirectly or even just theoretically connected to internet communication and therefore exempted all of these expenditures, even insofar as they were coordinated with the campaign for other purposes. I think one other important point is to note that the controlling commissioners did not dispute that there were some completely offline activity going on as well. That in addition to these internet communications and the question about what was or what was not input, correct the record engaged in huge amounts of spending for rapid response efforts, media outreach, training of surrogates to appear on TV, tracking of other candidates, opposition research that was then used in materials for the media in traditional form, not in the internet, and that all of these activities were also coordinated and represented coordinating. But they analyzed those differently. Correct. They did not attempt to throw all those expenditures in the bucket of input. Instead, there, and this is the second finding by the district court, there the commissioners just arbitrarily and capriciously disregarded the factual record that showed that that offline spending was also coordinated with the campaign. And that ruling was arbitrary and capricious. It did not really rely upon an interpretation of statute. It simply was the controlling commissioners faulty in our eyes analysis of the factual record about whether there was reason to believe that those activities had been coordinated. And to your point about what is a permissible exemption of what I'd call direct production costs. The problem was, is that correct the record appeared to be coordinating all of its activities. The general counsel found systemically its activities. It may be the only denial we'd ever seen was that perhaps there was some measure of non-coordination with respect to the surrogate training. But correct the record never denied in its actual administrative proceedings response that it had coordinated all of these expenditures. Because their view was that if you funnel everything through unpaid internet, that was only one of its theories. That was part of the problem with the controlling commissioners. That was only one of the what? That was only one of its legal theories for why it hadn't engaged in coordinated spending. The controlling commissioner, one of the other reasons that the respondents gave for why their coordinated spending was not a coordinated expenditure was that they believe that all of their media outreach and all of their press relations should have fallen into the media exemption. So it was another legal excuse. It was not a dispute of the facts. That was so obviously wrong. The media exemption applies only to the media that the controlling commissioners basically just ignored that entire legal defense and ignored the fact that correct the record had essentially tacitly or really openly admitted that it had coordinated that press outreach activity, those rapid response efforts, et cetera. You've already won the case on disaggregation. There has to be a disaggregation. One of the questions that's usefully raised by Goodman is be careful what you do about the internet exemption and carefully address the question about what is a legitimate input. I mean, that's the thing we're struggling with here. Correct. And the district court found that the controlling commissioners exemption of every single category of correct record spending as an input was contrary to law. It did not direct the agency to come up with any particular new rule. It just said that this ruling contrary to law, nor did it really hypothesize about a standard. It just said, well, it actually even said the expert agency is directed to come up with its own standard, but it must be reasonable, must comport with the statute and it must properly analyze the evidence. So it wasn't so much that the district court dictated any result. It just said that your current analysis is contrary to law or mandated back to the agency. So I don't think that really conceivable that the district court overreached because it didn't actually tell the commission how exactly it was supposed to analyze a input for the internet exemption. In my region, you can read the district court's opinion to be questioning the internet exemption. I don't think that's, that's what I was curious to hear what you had. And I think the district court, if that's what it did, it was a mistake. It proper inputs. And what is an input is the question we've been struggling with for Lord knows how long this morning, but that's different from whether the internet exemption is permissible. And just to clarify, the plaintiffs did not challenge the internet. But we still have the district court's opinion in front of us. So to the extent the district court said to comply with the statutory language, the internet exemption must be meaningfully bounded. Otherwise, committees could avoid reporting almost any coordinated expenditure merely to that. What you are, are defending is that it needs to be meaningfully bounded. Otherwise it can't be squared with the text, not to mention the purpose and send it back. Or would you advise that we give more concrete guidance? Well, I think that the nature of the sports review is simply whether or not the district court was correct in finding the controlling commissioner's rationale for dismissal contrary to law or not. As, as I said, the district court left it to the commission to finally sketch out a better line between what would be an exempt input and a not exempt input. And I'll quote the opinion because it says the court leaves it to the experts commission on remand to sketch the bounds of the internet exemption and more fully analyze the facts before it. That exception must have real bounds. However, in the clear evidence coordination discussed above shall inform the commission's analysis. So it just directed the court to directed the commission, right? Sorry. It just directed the commission. Absolutely. Directed the commission to come up with a standard that comported with the statute that just purposes and its own regulatory guidance. Another important point is that the district court found that the commissioners did not comport with its own, with the FEC's own rules, rulemaking and past decisions that it attempted to defend, you know, it's capacious expansion of the internet exemption based upon FEC past precedent. But the district court also looked at that and found that it provided no support for the idea that the internet exemption should assume basically every category of a super PACs spending on theory that they were in. Mr. Miller, you sought to retain rebuttal time. We ate it all up with our questions, but we'll hear from you for two minutes on rebuttal. Thank you, your honor. And three quick, very quick points, I think. And then any questions, just a quick point on the standing discussion that was raised by the police here. And it's just that from standing isn't a status you obtain and then all of your claims and all of the relief that you seek flows from that. It's analyzed by claim and by release thought. And so I think that the fact that they have informational standing doesn't allow them to bring in the other claims, not providing that standing they're arguing. There was no reason to believe the commission is not bound by standing. The commission has obligations under this statute. I'm not sure what your point is. We're not going to direct the commission to limit its consideration. I mean, I would assume we wouldn't, we don't have the authority to do that. Right. I just was pointing out that the contribution limits and source limitations that we're not part of. Yeah, but she's not fighting that. Okay. And a police also raised the point about the statute itself and the statute itself, the reach of the statute itself going beyond the, and being distinct from the regulation. And the debate here in this case has been about the definition of expenditure and coordination, which are in the regulations that were part of the regulatory exemption or the internet exemption. So I just wanted to emphasize that the debate, the disagreement in this case hinges on the definitions that give meaning to the statute. And that's where the litigation has been focused. And then lastly, she, police were arguing about the coordination status. And I wanted, I did want to point out that this stat statement of reasons, analyze that transaction by transaction looked at not whether there was some broad statement that we worked closely with the campaign, but looked at whether there was coordination based on the particular activities. And they found that to be a better approach because people often make statements about what they're doing, but they relied on evidence about what was actually taking place. Thank you. The case is submitted.
judges: Pillard, Childs, Edwards